Good morning. May it please the court. I am Robert Weems and I am the attorney for Ms. Chase. Ms. Chase is a Social Security applicant with severe mental impairments. At issue in this case, we think fundamentally and most essentially as a failure of the administrative law judge to take into consideration and to properly weigh the opinion evidence provided by Ms. Chase's social workers. What that opinion evidence shows, which is by Ms. Crespi, is that Ms. Chase does not have the ability to conform her behaviors in a structured setting, whether that's a work... And you're referring here, I take it, to the CRIPE reports. Yes, Your Honor. The first, I want to understand your argument as to those reports. As I understand, as I read the record, the ALJ did address the first CRIPE report, said he, it was from a social worker, it wasn't from a purely medical source, if we can argue whether she was, she had any training in that area, and said, I don't think it shows the requisite disability because it shows somebody reacting emotionally to having their children removed in a difficult domestic situation. Right or wrong, why isn't that sufficient treatment by the ALJ? It is not sufficient treatment because the reasons given by the ALJ were not, in fact, germane and did not reflect an accurate review of the record. Ms. Chase was not, this was not the first time she was in... Well, but is your definition of germane what you wanted to hear? Because that, you know, you argue that germane reasons were not given, but the ALJ did provide reasons, namely that Ms. Cripe's findings were situational to child custody dispute, not probative of work-related functioning, and influenced by Ms. Chase's drug use. So, aren't you asking us to reweigh the evidence? I am not. Let me address the last of those points first, because one of the things that's particularly problematic here, and I think troubling, is that the ALJ seemed to put particular emphasis on this idea that the drug use was responsible, and as the ALJ himself acknowledged, there was no medical evidence of that. And, in fact, what we have, and what is not uncommon with somebody with bipolar disorder and extreme depressive disorders, is that you get these co-occurrences, and people are trying to self medicate. Now, we have absolute evidence in this through Ms. Chase, or through Ms. Crespi, that Ms. Chase was highly motivated to seek reunification, and under those circumstances, highly motivated. She was not able to conform behaviors, and while there is some evidence of failed drug testing, she also was on different medications. And so, I think there would be an issue there, but I'm not asking for reweighing. But also, what was going on, and why she was getting thrown out of programs. I'm sorry, I didn't mean to interrupt you. Let me ask the question slightly differently. If the Cripe report is not a medical source report, if it's just an observation that somebody made at the time that you saw your client, does your argument fail? No, it doesn't, Your Honor, because what this Court has made clear in cases like Tobler and others, is that the ALJ is required to consider lay opinion. Well, but now, no, but I'm asking this. The ALJ did consider it. You may, you quarrel with why he rejected it, but is there a different standard for considering lay opinion? The standard is a germane, right, it has to be germane evidence for rejecting, and what lay opinion testimony in the Court has emphasized over and over again is particularly important for, is for developing evidence and showing how the particular mental disability that someone has, whether that's bipolar, depressive disorder, or anything else, how that manifests. And Ms. Cripe is giving us an absolutely unique third-party view. Am I mispronouncing? I thought it was Cripe. Is it Cripe? It's Cripe, Your Honor, and I apologize. But Ms. Cripe is giving us an absolutely unique view into how the systems or how the impairment affects a claimant's ability to work, because she's talking about someone who's highly motivated, and remember, we're talking about Ms. Chase. Ms. Chase is not, for the first time in this situation, she has three children that are already out in the community, and we're talking, there are five children that she has by multiple different partners. Three of them have already been placed out. They're not even at issue in the WIC reports, in the Welfare and Institution Code 300 proceedings that Ms. Cripe is preparing for reports in connection with. Well, but I don't, I don't know that that really, it's sort of like, if you have five children, it's not as bad if one dies. You know, the fact that she's already lost three, that she should be used to going to court, losing her children? It's not a matter of losing her children, and Ms. Cripe is in a situation where she's trying to assist her, and I do think that this is not an antagonistic relationship, necessarily, that we're talking about. Ms. Cripe is reporting back, and Ms. Cripe is reporting back, among other things, that she thinks that Ms. Chase very much wants reunification. She reports that she shows up an hour or two early, but she's not able to control her temper in those, even in the supervised situation. So your argument really isn't that the ALJ didn't consider the Cripe report, because we know the ALJ did, and discussed it. Your argument is that the ALJ's reason for not crediting it as indicating the discredit. Well, then the reasons are germane. You're saying they're wrong. Well, I think in light of the court's, in light of the precedent of the court, they're not germane reasons. It is, you know, saying she is a social worker, a non-acceptable medical source, is not a germane reason for discrediting her, and that seems to be one of the things that the ALJ did. Well, but the problem in the end is, don't you have to take from the Cripe report some evidence of that? In other words, we have an examining physician who says, Ms. Chase is able to perform simple tasks, follow instructions, and get along with others in the workplace. So there's evidence on the government side that your client's not disabled. You've got some procedural issues with it, I understand. And we have a social worker who says she exploded, to make it sort of the record. Even if we credit it as demonstrating that she was bipolar at the time and unable to sort of function. Well, and the bipolar is also a separate issue, because we do have a finding by the very psychiatrists that, or psychologists, that the ALJ decided to give the most weight to that she was bipolar, and yet no finding of bipolar being a severe impairment. Right, you can be bipolar and not necessarily be impaired. The, and I think what the ALJ did was they picked, and she decided to pick and choose among the different psychologists, and she went with one psychologist in order to eliminate what was a much more severe and dramatic impairment. But what you describe is what people do all the time, when they're looking at, you know, various pieces of evidence, they decide which ones are more germane, what they're going to give more weight to, or not. That's the function of the ALJ. So, you know, it's sort of like you're saying, well, it's not germane if you give less weight to that it's situational, and that it has to do with child support. I mean, child custody. Well, let's say I introduce a dental report, you know, I'm trying to, and I had anxiety at the dentist, and my disability is that I have anxiety going to work, and I have agoraphobia, or whatever. Well, an ALJ could look at that and say, well, a lot of people have anxiety at the dentist when you're about to get that, and so I don't consider that as relevant as someone that tested them for, you know, in other situations. So, you know, saying that's not germane is, to me, you know, I'm seeing that you, people can look at these things differently. Yeah, part of why I disagree is that what Ms. Cripe reports on is more than just what she observes at a particular, you know, one time in a supervised visitation. But we only have the one report of Cripe that was before the ALJ, right? I will have to go back and take a look. Yeah, I think Judge Callahan correctly states, only one. You have a second Cripe report that you try to get in later, but it wasn't before the ALJ, right? But I do think even in that first Cripe report, I believe, is reference to Ms. Chase being thrown out of her treatment programs, and she's being thrown out of the treatment programs not for non-compliance with drug treatment, but for getting into altercations with other patients and being otherwise not. Can I ask you to address a separate issue that troubles me here? The ALJ kept the record open and ordered a psychological evaluation, and your client failed to show up twice to the scheduled psychological evaluations. What are we to make of that in this case? Doesn't that make it difficult for you to persuade us that the ALJ didn't do a complete job in this case? I certainly hope not, but what I would say is you are talking, and the courts have recognized, and this court has recognized, that somebody who has mental impairments and severe mental impairments, which have been identified here, should not be penalized for things that are consistent. No, I understand, but what you're intending in this case is that the ALJ erred by not considering some, or that the district court erred more accurately, by not considering some very late submitted evidence. And the ALJ said, gee, you want to get in more evidence about the psychological state of your client? I'll schedule an evaluation. Your client doesn't show up. Under those circumstances, are we really required to consider late submitted evidence? First, I'm not sure the evidence gets you there, but that's not the issue. Are we required under those circumstances to consider this late submitted evidence as if it were before the ALJ? I do think it is appropriate. I think it is at least appropriate for it to be considered for remand back to the ALJ, if nothing else. We do have someone with a mental impairment. The reasons that she gave, one was oversleeping, which is absolutely consistent that that would be one of the side effects that was noted by her prescribing psychiatrist, that excessive sleepiness, things like that, from the medication she was taking. The other was that she was in a court-mandated rehabilitation program. She was not free to leave that program in order to go into a Social Security evaluation. That would have put her in violation of any terms of the WIC analysis. I think she gave good reasons why, one much stronger than the other, but two good reasons why, and both that were related to the impairment that she suffers from. I do think that it should not preclude her, and certainly in light of the purposes of the Social Security Act, it is absolutely appropriate that we indulge in every... we give her the benefit of the doubt. She clearly has... Do you want to reserve any time for rebuttal? I will. I hate to end on a stuttering point, though, but I do think it is appropriate that it be left open because both of those non-compliance situations are absolutely consistent with the expected. She did eventually get in. She did get assessed, and those assessments do show that she has borderline intelligence and things of that sort, which are all very important, particularly in light of her testifying that she had been a registered nurse, which, when we look at the actual employment history and things of that sort, we know that to the extent she may not be credible, it is only credible in her reporting about her ability to function at a higher level. She is functioning at a very low level, and that's documented by the third-party evidence. Thank you. I'll reserve the one minute, 57 seconds. My guess is Judge Callahan will give you two minutes. Well, we'll see how good his guessing is. Good morning. Good morning, Your Honor. How are you today? My name is Shea Bonnevin, representing the Commissioner of Social Security. Could you voice that? Absolutely. My name is Shea Bonnevin, and I'm representing the Commissioner of Social Security today. I think Your Honors have picked up on the point that the government is going to stress, which is that plaintiff is asking the court to reweigh evidence. The ALJ did not ignore any evidence in this record. The ALJ gave reasons for why she evaluated the CRIPE report the way she did. Those reasons are germane for the conclusion that the report was speaking to the claimant's reaction to a specific situational event, particularly that the government is taking her children away. That's a very stressful event. She did overreact, but that was relevant to that particular legal proceeding. The fact remains is that the remainder of the medical record, which is that the claimant has to prove up her disability case with medical evidence. The remainder of the medical record, whether it's the treatment records from Pathways to Wellness and Dr. Tom, the consultative examination report from Dr. Sheffia, and the state agency reviewing physician looked at this record, and they concluded that the claimant, despite all of her conditions and problems, retained the residual functional capacity to perform simple repetitive work. Let me ask you a question about the Jones report. I had the same question. What is that? Is it the Brown report? The Jones or the Brown? Yeah. Let's call it the Jones and tell us what it was. Well, I would almost say that plaintiff's attorney is in a better position to explain what the Jones report is, because it's unclear exactly, I think, who actually authored the report. Plaintiff's counsel has represented it by two different people. I can tell you it's not Dr. Brown, because Dr. Brown is our state agency physician. I would like to preface my argument, though, is that plaintiff has waived that issue before this court, because it was not raised at all in the district court. So this court shouldn't believe it. She referenced it, the questionnaire in her motion for summary judgment, I think. But made no argument about it. Okay. So let's assume she didn't waive it for a moment, because we're pretty good at figuring out whether there was waiver. I'm not very good at figuring out what this report says and what consideration it should have been given. So help me with it. Is it from a doctor? We don't really know. I think it's illegible. It looks like it says it's a psychiatrist, but the doctor's name is illegible. And to this date, plaintiff has been unable to actually identify who the source is. You do agree that it was appropriately before the district court? That it was appropriately before the district court? Right. Even though it wasn't... It was in the record, but it was not properly raised as an issue. That's your waiver argument. I'm just saying... It was in the record. Right. It was in the record, and therefore, had she properly raised it as an issue, the district court should have considered it. Would have considered the issue if she had raised it. Okay. So let's assume for a second that it's appropriately in front of the district court, the district court should have considered it. Did the district court consider it? Well, the district court did not articulate any basis for finding the LJS decision supported based specifically on that piece of evidence, but that doesn't mean that the district court didn't look at the record in its entirety. And again, the district court was faced with the issues that the plaintiff presented as what she thought was the problems with the case. She didn't raise the appeals counsel evidence, which is what that questionnaire consists of. So the district court did not specifically, I guess, address what way they were affording that. And I'm having trouble reading this, but... The actual questionnaire. I'm looking at it here. It's ER 82. But the first question is understanding and memory. And it says the ability to, and God knows what the next word is, work-like problems. I assume it's appreciate or do something with work-like problems. And the word no is checked. The ability to understand simple tasks is the next one, and the word no is checked. And then... Well, it's not no. It says not significantly limited. Is that... Well, but so tell me, giving this face value for a moment, maybe nobody was required to, doesn't it, isn't it some evidence of disability? I would say in these contexts and the situation of this case, no. Because the evidence has to have consistency with the record to have weight, and it has to have objective support, either on this form or somewhere else in the record. And that's, the commissioner's regulations state that. So even if we were to assume, which I don't think we can, that this questionnaire came from an acceptable medical source, it would not satisfy the commissioner's regulations to say that this opinion should be afforded any weight whatsoever. This is, to the extent that there's checkboxes, there's no explanation for why this particular person thinks that this claimant has marked limitations. There's no discussion of any clinical findings. We don't even know if this person examined the claimant. It's in stark contrast to what the treatment records say when the claimant is complying with the medications. And there's just, there's no reference to anything else in the record. And again, I'm going to emphasize that it's plaintiff's burden to prove that she is disabled with the medical evidence and other evidence that she presents. So to put it differently, your position is even if the district court was required to consider this report, it doesn't meet the plaintiff's burden to establish disability. No, because with the appeals counsel evidence, the plaintiff would have to show that this disrupted the substantial evidence that supported the ALJ's decision. And there's an abundance of evidence in the record, medical and otherwise. So you're relying on Shefai Brown and Tom? Correct. That would be the primary sources. But you're looking at the treatment records, which is Dr. Tom and the pathways to wellness. And so all those clinical findings show that she's doing fairly well. They're described as being cooperative. There's never any kind of outlandish behavior documented anywhere in the longitudinal treatment records. And Dr. Tom's treatment records span the period of time that social worker Cripe is describing in her report. So the very outrageous or outlandish behaviors that the claimant may have exhibited in a very and keeping them away from her is not really demonstrated anywhere else in the medical record. Even when she starts abusing methamphetamine, cocaine, and marijuana again, and then stops taking her medications, the record with her interactions with the staff at her physician's office is still relatively normalized. They still describe her cooperative. She may be combative. She describes that she's feeling more anxious, but obviously that's a result of her medications. So when we're looking at this record, and again, the only opinion evidence we have is the CE, Chef IA, and Dr. Brown who looked at this record. They came up with a residual functional capacity assessment, which is absolutely consistent with what the ALJ found. We don't have any additional questions. I ask that you affirm. Thank you very much. Sir, can you help us out with this report? It's got a cover sheet that says the claimant now submits an additional information of a psyche valve, but there's no indication on the psyche valve who did it. Sometimes you call it the Jones report in your brief. Sometimes you call it the Brown report. What is it? My best knowledge of it is that it is a psych evaluation that was prepared by the Social Security Agency in connection with the separate agency. You have the burden. The best guess isn't a burden. No one would want us to decide cases on a best guess. If that were the other side's evidence, you would be screaming at the top of your lungs. I'll scream at the top of my lungs that it should come in, and I'm going to scream at the top of my lungs that it should come in because it's clearly a government document. Our mind is clearly prepared by the agency, and it adds, and it is significant. By which agency? By the Social Security, I think it's Disability Determination Services is my guess. We know that it bears a letterhead. Right. We're back to that guess word again, though. I know it's tough. You know, Health Conditions looks like it's located in Hayward. Most likely, as you pointed out to me, this is a state agency that's responsible for the assessments. I guess, and maybe we're guessing, but when I read this, it looks like a form your client filled out. It's signed by your client twice. It looks like a questionnaire that somebody is filling out to give to the agency rather than an evaluation by the agency. Am I wrong? It says, please return completed form two. It's signed name is there, your client's name, but at the end of it, there's a signature, patient's signature by your client. So I'm wondering whether or not this just isn't a form your client filled out to send to somebody. I've provided the best information I've been able to provide. And I appreciate your dilemma. And it is unfortunate, and particularly when we're trying to get information from the state agencies in connection with something which is in a WIC proceeding, it becomes exceptionally difficult because of the confidentiality issues to actually get things released. And Social Security doesn't seem to have much better luck. We do have what believe it to be, and we've presented that to the best of our ability based on Mr. Ragnus's declaration. Unless my colleagues have any additional questions, you're in overtime now. So that will conclude argument. Thank you. All right. Thank you both sides for your helpful argument, and this matter will stand submitted.
judges: Callahan, Hurwitz, Owens